STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-169

JOSEPH WILLIAMS AND STACY WILLIAMS

VERSUS

MARK ROBERTS AND MCCOY, ROBERTS, &
BEGNAUD, LTD.

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 76,252
HONORABLE FRED C. SEXTON, JR., DISTRICT JUDGE AD HOC

**********

J. DAVID PAINTER
JUDGE

**********

Court composed of Oswald A. Decuir, Glenn B. Gremillion, and J. David Painter,
Judges.

AFFIRMED.

James B. Gardner
P.O. Box 1534
Shreveport, LA 71165-1534
Counsel for Defendants-Appellees:
    Mark Roberts and McCoy, Roberts
    & Begnaud, Ltd.

Kenneth N. Simmons
298 Pico Street
Many, LA 71449
Counsel for Plaintiffs-Appellants:
    Joseph Williams and Stacy Williams

Jack L. Simms, Jr.
103 N. Third Street
Leesville, LA 71446
Counsel for Plaintiffs-Appellants:
    Joseph Williams and Stacy Williams

**PAINTER, Judge.**

In this legal malpractice case, Plaintiffs, Joseph Williams and Stacy Williams ("the Williams Brothers"), appeal the trial court's grant of summary judgment in favor of Defendants, Mark Roberts and McCoy, Roberts, and Begnaud, Ltd. For the reasons that follow, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On October 7, 2003, the Williams Brothers filed suit against Mark Roberts and the law firm of McCoy, Roberts, and Begnaud, Ltd. The Williams Brothers alleged that Roberts was their attorney in the formation of a Louisiana limited liability company named "Weight Loss Development - Denver, L.L.C." ("the L.L.C."). Apparently, the Williams Brothers, along with Thomas C. Litton ("Litton") and Robert Dockens ("Dockens"), formed the L.L.C. to enter into a franchise agreement with LA Weight Loss Centers, Inc. Litton was to be the managing member. The Williams Brothers alleged that they were under the impression that the L.L.C. would be controlled by fifty-one percent of the membership. The Williams Brothers further alleged that the operating agreement, which was prepared and revised by Roberts, did not provide for fifty-one percent control as they had requested, but instead vested Litton with sole control and contained other provisions that were extremely adverse to the Williams Brothers. The malpractice suit alleged that Roberts had a fiduciary relationship with them and other members of the L.L.C. The Williams Brothers further contended that because Roberts failed to consult with them and to advise them as to the contents of the operating agreement and the other terms and conditions of the agreements that the Williams Brothers alleged to be severely adverse to them, Roberts committed legal malpractice.

1

On April 20, 2004, Defendants filed a motion for summary judgment which alleged that at no time did Defendants receive a request for representation from Plaintiffs, agree to represent Plaintiffs, or assume the representation of Plaintiffs with respect to any documents prepared for the creation of the L.L.C. or its operation. In support of the motion, Defendants attached the affidavits of Roberts, Litton (managing member of the L.L.C.), and Dockens (a non-manager, investor member in the limited liability company). In opposition to the motion for summary judgment, the Williams Brothers attached their own affidavits.

Written reasons for judgment were read into the record on April 22, 2005, and on July 5, 2005, the trial court signed a judgment granting Defendants' motion for summary judgment and dismissing Plaintiffs' suit with prejudice. This ruling was based on the trial court's finding that there was no express agreement for Roberts to represent Plaintiffs. Plaintiffs then moved for a new trial, which was denied by judgment signed September 19, 2005. This appeal by Plaintiffs followed. On appeal, Plaintiffs assert the sole assignment of error that "the trial court committed manifest error in granting the defendants' motion for summary judgment." In sum, Plaintiffs argue that summary judgment was inappropriate in this case because the evidence establishes that the Williams Brothers reasonably believed that Roberts was their attorney.

## DISCUSSION

In *Sinegal v. Kennedy*, 04-299, p. 3 (La.App. 3 Cir. 9/29/04), 883 So.2d 1079, 1081, *writ denied*, 04-268 (La. 1/7/05), 891 So.2d 683, we stated:

> Appellate courts, in determining whether summary judgment is appropriate in a case on appeal, review evidence *de novo* under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Succession of Granger v. Worthington*, 02-0433 (La.App. 3 Cir. 10/30/02), 829 So.2d 1108. The determination of materiality of a particular fact can be made only in light of the

2

substantive law applicable to the case. *Rener v. State Farm Mut. Auto. Ins. Co.*, 99-1703 (La.App. 3 Cir. 4/5/00), 759 So.2d 214.

Furthermore, in *Butler v. DePuy*, 04-101, p. 3 (La. App. 3 Cir. 6/9/04), 876 So.2d 259, 261 (*citing Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730), we explained:

> The initial burden of proof remains with the mover to show that no genuine issue of material fact exists.  However, if the mover will not bear the burden of proof at trial, he need not negate all essential elements of the adverse party's claim, but rather he must point out that there is an absence of factual support for one or more elements essential to the claim.  La.Code Civ.P. art. 966(C)(2).  Once the mover has met his initial burden of proof, the burden shifts to the non-moving party to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial.  *Id.*

Thus, it is for us to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law.  La.Code Civ.P. art. 966(B) and (C).

 "To establish a claim for legal malpractice, a plaintiff must prove:  1) the existence of an attorney-client relationship;  2) negligent representation by the attorney;  and 3) loss caused by that negligence." *Costello v. Hardy*, 03-1146, p. 9 (La. 1/21/04), 864 So.2d 129, 138.  In this case, the issue is whether there was an attorney-client relationship between Roberts and the Williams Brothers.

In his affidavit introduced in support of his motion for summary judgment, Roberts stated that he was retained by Litton on October 16, 2002 to create the L.L.C. and that he drafted the articles of organization, the initial report, and the operating agreement and transmitted them to Litton via e-mail.  Roberts was aware that Litton was meeting with the Williams Brothers and Dockens, the other member of the L.L.C., in order to execute the documents that he had prepared.  On October 25, 2002, Litton requested some additions to the operating agreement, which Roberts made and transmitted to Litton by e-mail.  Roberts further stated that at no time did he or his

3

firm receive a request from the Williams Brothers to represent them in connection with the creation of the L.L.C. Roberts further stated that he understood, based on information furnished to him by Litton, that the Williams Brothers had their own attorney. Roberts further stated in his affidavit that the first contact he had with the Williams Brothers was when they came to Roberts' office to sign franchise documents, which neither he nor anyone from his firm prepared. Roberts also stated in his affidavit that he represented the L.L.C. in connection with collection efforts against the Williams Brothers with respect to their capital contributions to the L.L.C.

Litton's affidavit was also attached to the motion for summary judgment. Litton stated that the Williams Brothers told him that they had their own attorney and that Litton never asked or retained Roberts or his law firm to represent the Williams Brothers in connection with the formation of the L.L.C.

Roberts and his law firm also submitted the affidavit of Dockens in support of their motion for summary judgment. Dockens stated that he did not retain Roberts or his law firm to represent him in connection with the formation of the L.L.C. Dockens also stated that after the addition to the operating agreement requested by Litton was done, all of the documents were executed by Litton, Dockens, and the Williams Brothers on October 25, 2002.

In opposition to the motion for summary judgment, the Williams Brothers each submitted identical affidavits. In these affidavits, the Williams Brothers stated that at no time did anyone tell them that Roberts did not represent them or that they should seek independent legal counsel. The Williams Brothers stated that they believed that Litton had requested for Roberts to represent all of them in the formation of the L.L.C. and that they reasonably believed that Roberts represented them.

4

In its reasons for judgment, the trial court found that there was no express agreement for Roberts to represent the Williams Brothers. The trial court also relied on *Bergman v. New England Ins. Co.*, 872 F.2d 672 (5 Cir. 1989) for the proposition that it is not unusual for one party's attorney to prepare a document for several parties to sign and that the Louisiana Bar would be stunned to learn that in doing so, an attorney became the attorney for all parties. We agree with the trial court.

There is no dispute that there was no written agreement as to representation between Roberts and the Williams Brothers and that the Williams Brothers never had any conversations with Roberts concerning the drafting of the agreements relative to the L.L.C. The Williams Brothers presented no evidence, other than their affidavits attesting to their belief that Roberts represented them, tending to show the existence of an attorney-client relationship. Moreover, we note that even though whether an attorney-client relationship exists turns largely on one's subjective believe that it does, a person's subjective belief that an attorney represents him must be reasonable under the circumstances. *Exposition Partner, L.L.P. v. King, LeBlanc & Bland, L.L.P.*, 03-580 (La.App. 4 Cir. 3/10/04), 869 So.2d 934. Thus, we find that there was not enough evidence to establish an issue of material fact as to the existence of an attorney-client relationship.

**DECREE**

After our *de novo* review of the record in this case, we conclude that the trial court correctly granted summary judgment in favor of Defendants, Mark Roberts and McCoy, Roberts, and Begnaud, Ltd. There are no genuine issues of material fact on the issue of the existence of an attorney-client relationship. The trial court judgment in favor of Defendants on the motion for summary and judgment and dismissing

5

Plaintiffs' suit with prejudice is, therefore, affirmed. Costs of this appeal are assessed to Plaintiffs-Appellants, Joseph Williams and Stacey Williams.

**AFFIRMED.**