JAMES F. MCKAY III, CHIEF JUDGE
Third party defendant, Crescent Title, LLC ("Crescent Title"), appeals the judgment rendered on February 3, 2017, granting a motion for summary judgment in favor of third party plaintiff, the Succession of Doris Lavner Feingerts ("Succession"). For the reasons set forth below, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
This dispute stems from the 2009 sale of immovable property located at 5839 Bellaire Drive in New Orleans ("Property"). The Property was part of the community existing between Maurice and Doris Feingerts. Maurice died in 1967. In his last will and testament, dated February 18, 1966, Maurice left his entire estate in trust to his three children, Susan, Jane, and Bruce Feingerts (the "beneficiaries"), subject to the usufruct of their mother, Doris. The will stipulated that the Property would remain in trust until each child reached the age of thirty-one. At that time, the trust would terminate.
In 1974, a judgment of possession was rendered in Maurice's succession, naming Doris as trustee of the children's testamentary trusts. Doris was recognized as the owner of her half of the community along with a usufruct over the other half. The children were each recognized as one-third owners of Maurice's estate subject to Doris' usufruct. Thus, the beneficiaries would ultimately inherit a one-sixth ownership interest in the Property. The judgment of possession rendered in Maurice's succession was recorded in the public record. However, Maurice's will, establishing the trust and providing the conditions for the termination of the trust, was not recorded.
The Property sustained damage from Hurricane Katrina in 2005. In 2009, Doris listed the Property for sale with real estate agents Anne Comarda "Comarda") and Joyce Delery ("Delery"). Doris entered into an agreement to sell the Property to Ronda Wortmann D'Anna ("D'Anna"). Crescent Title was hired to close the sale. Paul Lapeyre ("Lapeyre"), an attorney for Crescent Title, conducted the title research.
It is undisputed that by 2009, the testamentary trust had terminated due to the beneficiaries having all reached the age of 31. Doris' daughters, Susan and Jane, consented to the sale of the Property. Because Bruce did not consent to the sale, Doris requested that her real estate agents (Comarda and Delery) inquire whether the *24 Property could be sold without Bruce. The real estate agents sought an opinion from Robert Bergeron ("Bergeron"), an attorney with Crescent Title. Bergeron concluded that based on a review of the public record, i.e., the judgment of possession rendered in Maurice's succession, Doris had the authority to sell the Property without Bruce's consent. Pursuant to Bergeron's opinion, Doris sold the Property to D'Anna on July 30, 2009, for $127,000.00.
Doris died in 2011. On July 30, 2012, Bruce filed a petition for recognition as owner of the Property in the Civil District Court, challenging D'Anna's ownership of the Property. He alleged therein that he was a one-sixth owner of the Property, which was sold by his mother without his consent or authority. In response, D'Anna filed a third party demand against the beneficiaries and the Succession. The Succession filed a third party demand against Crescent Title asserting that Crescent Title breached its obligation to properly close the sale of the Property.
In September 2012, D'Anna filed a voluntary petition for bankruptcy in the Eastern District of Louisiana. In March 2015, D'Anna removed her state court action against the beneficiaries and the Succession to federal court. The actions were consolidated. The case was presented to the bankruptcy court on September 30, 2015, and an opinion was rendered on March 1, 2016. The bankruptcy court determined that pursuant to Maurice's will, the testamentary trust terminated in 1987 (or sooner) because the Trusts had all reached the age of 31. Thus, at the time of the sale in 2009, Bruce owned a one-sixth interest in the Property, and Doris no longer had authority to sell the Property without Bruce's consent. The court rejected Crescent Title's argument that they were entitled to rely on Doris' authority to sell because the judgment of possession did not indicate when the Trusts would terminate. The court held:
In this circumstance, Defendants [Crescent Title] were aware of several critical facts prior to the Sale. Defendants knew that Mrs. Feingerts owned one-half of the Bellaire Property and allegedly was trustee of Trusts owning the other half. While Defendants claim they are entitled to rely on Mrs. Feingerts' authority, as previously explained, Louisiana law is clearly at odds with their position. Under the Civil Code, they are not entitled to rely on any representations as to capacity or authority contained in a recorded document. Instead, the nature and extent of Mrs. Feingerts' authority were subject to verification by means other than the public record, and Fidelity[1] and Crescent conducted a search of the succession records for just this reason.
The search of the Orleans Parish Civil Court records produced the Will. Although not contained in the mortgage or conveyance records, the Will was of public record in the Maurice Feingerts' succession. Filed in Civil District Court for Orleans Parish and probated by the same court issuing the Judgment of Possession, it was readily available and found by Crescent and Fidelity prior to the Sale. The Will dated February 18, 1966, clearly set forth the ages of the Feingerts children and provided that upon each reaching the age of thirty-one (31), their trust would terminate. Given that Maurice Feingerts died on July 19, 1967, under any calculation, more than thirty-one (31) years had lapsed. Therefore, from the face of the document, it was evident that Mrs. Feingerts' authority *25 had lapsed due to termination of the Trusts.
Prior to the Sale, Defendants possessed written and recorded (in fact probated) documentation to refute Mrs. Feingerts' representations as to her capacity and authority. This, at a minimum, placed them "on inquiry" as to her right to transfer title. Defendants ignored this clear evidence regarding Mrs. Feingerts' lack of authority and capacity in proceeding to sale. They did so at their own risk and peril.
Finally, the bankruptcy court rejected Crescent Title's argument that La. R.S. 9:2029.1[2] required the execution and recordation of the termination of the trust, i.e., the will, in order to have an effect on third parties. The court noted that La. R.S. 9:2029.1 became effective on August 1, 2015, almost six years after the sale of the Property, and was not to be applied retroactively.
As a result of the bankruptcy court's findings, the sale of the Property was rescinded. Bruce was recognized as a one-sixth owner of the Property, and a judgment was rendered in favor of D'Anna and against the Succession in the amount of $276,096.10, which included the purchase price, cost of improvements, damages[3] , and interest. The Succession's third party claims against Crescent Title were not addressed in the federal court proceedings, but were remanded back to the Civil District Court.
In August 2016, after the remand to the Civil District Court, the Succession filed a motion for summary judgment, seeking indemnity from Crescent Title for the judgment rendered in the bankruptcy court. In support of the motion for summary judgment, the Succession introduced the bankruptcy proceedings, and the depositions of Comarda and Bergeron.
In opposition to the motion for summary judgment, Crescent Title argued that they acted properly in passing the act of sale based on the examination of the public record and that genuine issues of fact precluded summary judgment. Crescent Title relied on the affidavit of attorney Lapeyre, the seller's affidavit prepared by Mrs. Feingerts, and the depositions of Bergeron and Bruce.
The matter was brought before the trial court on December 2, 2016. Judgment was initially rendered on January 3, 2017, finding that Crescent Title was liable to the Succession for all damages assessed against the Succession in the bankruptcy proceeding. By consent of the parties, and in accordance with La. C.C.P. art. 1951, the judgment was amended on February 3, 2017, to state that upon satisfaction of the judgment, "the Succession of Doris Lavner Feingerts, Susan Feingerts Hackmeier, and Jane Feingerts Rushing shall transfer all of their collective right, title and interest in the immovable property located at 5839 Bellaire Drive, New Orleans, Louisiana, to Crescent Title, LLC."
*26 On appeal, Crescent Title asserts that the trial court erred in granting the Succession's motion for summary judgment because: 1) the Succession's detrimental reliance claim fails as a matter of law; and 2) genuine issues of material fact exist as to whether Crescent Title was negligent with respect to the closing of the sale of the Property. Additionally, Crescent Title argues for the first time on appeal that the Succession's claim against Crescent Title is perempted by La. R.S. 9:5605.
LAW AND ANALYSIS
Standard of Review
"Appellate courts review summary judgments de novo , using the same criteria that govern the district court's consideration of whether summary judgment is appropriate." Hogg v. Chevron USA, Inc. , 2009-2632, 2009-2635, p. 5 (La. 7/06/10), 45 So.3d 991, 996 (citing Schroeder v. Board of Supervisors of Louisiana State University , 591 So.2d 342, 345 (La. 1991) ). "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends." La. C.C.P. art. 966A(2). "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966A(3).
Assignment of Error No. 1. The Succession's detrimental reliance claim.
Crescent Title asserts that the trial court erred in granting summary judgment because the Succession's detrimental reliance claim fails as a matter of law. Crescent Title maintains that the Succession cannot allege detrimental reliance because the Succession does not claim that Crescent Title ever made a "promise" to Doris.[4] Rather, Crescent Title argues that the Succession only claims that Bergeron gave an incorrect legal opinion, and that an alleged incorrect legal opinion does not form the basis for a detrimental reliance claim.
The Succession counters, asserting that this assignment of error is waived because Crescent Title did not raise the argument in the trial court. This assertion is incorrect. It is evident from the record that Crescent Title raised its objection to the detrimental reliance claim in its opposition to the motion for summary judgment. Alternatively, the Succession further argues that it does have a claim for detrimental reliance because Bergeron obviously made a "promise" when he guaranteed that Doris could sell the Property without Bruce's consent.
Based on the record before us, it is clear that Doris relied on an assertion made by Bergeron. Whether or not that assertion is labeled a promise or a legal opinion is inconsequential in determining whether Doris relied on the assertion to her detriment. We find no merit in this assignment of error.
Assignment of Error No. 2. Genuine issues of material fact.
In this assignment of error, it is argued that genuine issues of material fact remain as to whether there was negligence *27 on the part of Crescent Title in closing the sale of the Property.
Crescent Title maintains that Bergeron and Lapeyre acted properly in relying on the public record. Specifically, Crescent Title contends that they were entitled to rely on the recorded judgment of possession, which did not state the conditions for the termination of the trust. Crescent Title relies heavily on the fact that Maurice's will, which provided the conditions for termination of the trust, was not recorded. Lapeyre stated in his affidavit that he had no duty to research Maurice's succession, which was over twenty years old.
Crescent Title further contends that Doris should have recorded Maurice's will. However, as correctly determined by the federal court in the bankruptcy proceedings, the law at the time of the act of sale did not require recordation of the termination document. As previously explained, La. R.S. 9:2029.1, requiring such a recordation, did not become effective until August 1, 2015. Moreover, in these proceedings, it is clear from Bergeron's deposition testimony, and in his testimony before the bankruptcy court, that he was provided with a copy of the will prior to the act of sale. On the face of the will, the trust had already terminated. Thus, Crescent Title was put on notice that the testamentary trust, and Doris's right to sell the Property, had expired. This pivotal fact is not in dispute.
Based on our de novo review of the record, we conclude that there are no genuine issues of material fact as to whether Crescent Title breached its obligation to properly close the sale on the Property. Accordingly, we find no merit in this assignment of error.
Exception of Peremption
For the first time on appeal, Crescent Title raises a peremptory exception, asserting that the Succession's claim against Crescent Title is perempted pursuant to La. R.S. 9:5605.[5] Specifically, Crescent Title maintains that because the legal advice given by Bergeron sounds in legal malpractice, the Succession's claim is perempted on its face.
In support of this argument, Crescent Title points to Comarda's deposition testimony. Comarda testified that she contacted Bergeron in order to get a legal opinion as to whether Doris had authority to sell the Property without Bruce's consent. Based on Bergeron's opinion, the sale went forward.
It is well-settled in Louisiana that an attorney-client relationship is a necessary element of a legal malpractice claim. See Teague v. St. Paul Fire and Marine Ins. Co. , 2007-1384, p. 8 (La. 2/1/08), 974 So.2d 1266, 1272. In St. Paul Fire and Marine Ins. Co. v. GAB Robins N. Am., Inc. , 2008-0331, pp. 8-9 (La. App. 4 Cir. 11/19/08), 999 So.2d 72, 77, we stated:
*28 The existence of an attorney-client relationship turns largely on the client's subjective belief that it exists. Louisiana State Bar Association v. Bosworth , 481 So.2d 567, 571 (La. 1986) ; Francois v. Andry , 05-0388 (La. App. 4 Cir. 4/5/06), 930 So.2d 995. However, a person's subjective belief that an attorney represents him must be reasonable under the circumstances. Exhibition [Exposition] Partner, L.L.P. v. King, LeBlanc & Bland, L.L.P. , 03-580 (La. App. 4 Cir. 3/10/04), 869 So.2d 934 ; Williams v. Roberts , 06-169 (La. App. 3 Cir. 5/31/06), 931 So.2d 1217. The requirement that the belief be reasonable is an objective standard. "The claimant's subjective belief does not establish an attorney-client relationship unless the lawyer reasonably induced that belief." Ronald E. Mallen and Jeffrey M. Smith, 1 Legal Malpractice § 8:3 (2008 ed.). For this reason, an attorney client relationship cannot exist in the absence of any initial communication-verbal, written, or otherwise-between the attorney and the client. Lirette v. Roe , 93-0441 (La. App. 4 Cir. 1/13/94), [631 So.2d 503] 631 So.2d 503, 506.
In opposition to the exception of peremption, the Succession argues that there was no attorney-client relationship between Doris and Bergeron. We agree.
The record before us does not demonstrate whether Doris believed that an attorney-client relationship with Bergeron existed. Doris passed away before this action was filed. However, Bergeron and his attorney both emphatically stated on the record that Bergeron did not represent Doris. Bergeron's attorney further explained that Doris had as many as five other attorneys representing her affairs. Additionally, Comarda explained in her deposition that Bergeron did not represent the buyer or seller; he represented the bank. Because an attorney-client relationship did not exist, the Succession could not have asserted a legal malpractice claim.
Crescent Title avers that the Succession's entire claim rests on the legal opinion provided by Bergeron prior to the sale, thus the peremptive period for legal malpractice applies. We find no merit in this assertion. The Succession's third party action clearly states a claim against Crescent Title for the breach of its obligation to properly close the sale. That obligation included researching Maurice's succession to determine whether the trust had terminated and whether all the heirs were required to sign. Breach of that obligation is particularly evident in this case considering the fact that Crescent Title was provided with a copy of Maurice's will. In sum, the peremptive period for legal malpractice is not applicable here. Accordingly, Crescent Title's exception of peremption lacks merit.
CONCLUSION
For the foregoing reasons, we find no error in the trial court's granting of summary judgment in favor of the Succession on its third party claim against Crescent Title. Accordingly, the trial court's judgment is affirmed. Furthermore, we find no merit in Crescent Title's exception of peremption.
AFFIRMED

Fidelity issued a title insurance policy to D'Anna. The Succession filed a third party demand against Fidelity; that complaint was later dismissed.

La. R.S. 9:2029.1, Added by Acts 2015, No. 225, § 1, provides:
If a trust owns immovable property at the time the trust terminates and the date of termination is not discernable on the face of the recorded trust agreement or extract of trust, the termination shall not cause the dispositive provisions of the trust to have their ultimate effect insofar as third persons are concerned until an act evidencing such termination has been recorded in the conveyance records of the clerk of court of the parish in which the immovable property is located.

Damages included interest associated with the loan, insurance, finance charges, property taxes and court costs.

Crescent Title cites La. C.C. art. 1967 and Wooley v. Lucksinger , 2006-1167 (La. App. 1 Cir. 5/4/07), 961 So.2d 1228, 1238, for the premise that the first element of proof in a detrimental reliance cause of action is that a "promise" was given by the defendant to the plaintiff.

La. R.S. 9:5605(A) provides:
No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.